For the want of this, as stated above, the judgment is reversed and the cause remanded.

---

INTERNATIONAL ORDER OF TWELVE KNIGHTS & DAUGHTERS OF TABOR v. WILSON et al.

(Court of Civil Appeals of Texas. San Antonio. Nov. 13, 1912.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENTS.

An assignment of error, not followed by a statement, will not be considered, though there is a reference to the record for a bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. INSURANCE (§ 818*) — FRATERNAL INSURANCE—ACTIONS — EVIDENCE — ADMISSIBILITY.

In an action against a negro fraternal organization on a benefit certificate, payable to the deceased member's wife and father, a letter written after the member's death, notifying the wife of her expulsion because of her disregard of the laws of the order and her application to the white courts concerning her husband's death, was inadmissible; the issue being whether the member at his death was a member in good standing.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2003–2005; Dec. Dig. § 818.*]

3. INSURANCE (§ 815*) — FRATERNAL INSURANCE—ACTIONS—EVIDENCE.

Where the petition in an action on a certificate issued by a fraternal organization alleged that decedent was a member of a subordinate temple, it was error to introduce in evidence the financial card of another temple.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1996–1998; Dec. Dig. § 815.*]

4. INSURANCE (§ 747*) — FRATERNAL INSURANCE—GOOD STANDING OF MEMBER AT TIME OF DEATH.

Where a fraternal benefit certificate was made payable on condition of the member's good standing in his subordinate temple, and the evidence showed that decedent was not in good standing in the only temple to which he belonged, or could belong, at the time of his death, there could be no recovery on the certificate, merely because he sent money by some one not authorized to handle money to the grand body of the order.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1892; Dec. Dig. § 747.*]

Appeal from Dallas County Court; W. F. Whitehurst, Judge.

Action by A. G. Wilson and another against the International Order of Twelve Knights & Daughters of Tabor. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

J. L. Turner, of Dallas, for appellant. Hiram F. Lively and R. A. Ritchie, both of Dallas, for appellees.

FLY, C. J. A. G. Wilson, the surviving wife of G. W. Wilson, deceased, and G. W. Wilson, his father, instituted this suit against appellant, a negro fraternal organization, on a certificate for $300, issued by appellant to

the deceased; $200 being payable to the wife and $100 to the father. It was alleged that at the time of his death G. W. Wilson "was a member of Green Bay Temple Number 19, of Dallas county, Texas, which said Green Bay Temple is a subdivision of the defendant order." The defenses were that deceased was never a member of Green Bay Temple, but had been a member of King Solomon Temple, and that "he was unfinancial with said temple, and was in no way entitled to any benefits therefrom." It was also alleged that the deceased had been suspended from King Solomon Temple on account of his "unfinancial" condition, which seems to mean that he had not paid all his dues and endowment and burial funds. Twenty-four pages of the typewritten transcript are devoted to setting out the cause of action and defenses.

The testimony tended to show that G. W. Wilson, deceased, was never in reality a member of Green Bay Temple because of his failure to obtain a transfer from King Solomon's Temple, of which he was a member, and to pay the amounts due that temple. It appears that he attempted to join Green Bay Temple to avoid the dues he owed in the other temple, from which he was suspended in May, 1910, for failure to pay his indebtedness. He died in July, 1910.

[1] The first assignment is not followed by a statement, and will not be considered. Reference to the record for a bill of exceptions will not take the place of a statement.

[2] The second assignment of error complains of the introduction in evidence of a letter from Mount Olive Tabernacle to "Daughter A. G. Wilson," written on September 10, 1910, long after the death of her husband, notifying her of her expulsion, "on account that you disregard the laws of Tabor, and have applied to the white courts concerning the death of your husband." The letter was improperly admitted in evidence. It had no bearing, whatever, on the issues in the case, and was calculated to arouse a prejudice against appellant. It was written by a subordinate of appellant, which had no connection with the case.

[3] The petition alleged that deceased was a member of Green Bay Temple; and it was error to introduce in evidence the "financial card" of Rice Temple, and the third assignment of error is sustained. For the same reason the letter from S. S. Reid to counsel for appellees, although its contents do not seem to be injurious to appellant.

The testimony as to conversations between officers of appellant and the attorney for appellees was immaterial, and should not have been admitted.

[4] The good standing of the deceased with the subordinate was what fixed his standing in the organization; and it was error to instruct the jury that if the Supreme Secretary of the order had accepted certain dues its liability was fixed. It was provided in the certificate of the dead man that the payment of the $300 was conditioned on his good standing in his temple. The proof showed that deceased was not in good standing in the only temple to which he belonged, or could belong. He was not a legal member of Green Bay Temple, and his standing therein was worth nothing to him. He could not obtain a standing in the grand body by sending up money by some one not authorized to handle or send in such money. Such money could not, and did not, give him standing in King Solomon's Temple, to which he belonged.

The overwhelming weight of the testimony was against the contention of appellees; and the evidence showed that the deceased was in arrears to his temple and was rightfully suspended, and was so suspended when he died. His wife and father are not, under the rules of the organization, which were fully accepted by deceased, entitled to the insurance.

The judgment is reversed, and judgment here rendered that appellees take nothing by their suit, and that appellant recover all costs in this behalf expended.